IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EBY SALES INTERNATIONAL INC.
*doing business as*
HEALTHY ORIGINS,                                        25cv1757
                                                        ELECTRONICALLY FILED

                    Plaintiff,

        v.

BRIDGETTE CHAMBERS,

                    Defendant.

## MEMORANDUM ORDER

This is a single count breach of contract case. Currently before the Court is Defendant's

Motion to Dismiss Plaintiff's Complaint for failure to state a claim in accordance with Federal

Rule of Civil Procedure 12(b)(6). *See,* ECF 13 (motion) ECF 14 (brief in support).  The Plaintiff

filed a Brief in Opposition to the motion (ECF 20), and Defendant filed a Reply Brief (ECF 21)

making the matter ripe for disposition. For the reasons that follow, the Court will grant the

Defendant's motion with prejudice.

## I. Background

The parties to this action executed a contract whereby Plaintiff agreed to purchase

ownership units in a Delaware limited liability company, 2B Associates, LLC ("2B"), from

Defendant. ECF 1, ¶5. The Complaint reads that Plaintiff agreed to purchase "from Defendant

150 units in 2B (the 'Units') for a purchase price of $2,621,880.00." ECF 1, ¶5.  The Complaint

further alleges, "Defendant is defined as 'Owner' in the Contract. See Exhibit 1."  ECF 1, ¶13. In

addition, the Complaint identifies "Defendant's units which were purchased from Defendant are

defined as 'Owner's Units' in the Contract. See Exhibit 1." ECF1, ¶14.

This contract was attached to the Complaint as Exhibit 1. ECF 1-2. The Contract itself indicates that, "[t]his letter ("Agreement") serves to set out the specific terms for purchase by [Plaintiff] of 150 Units of 2B Associates, LLC, a Delaware limited liability company ("2B" and "Company") from [Defendant] ("Owner"), which comprise 15% of the issued and authorized Units of the Company ("Owner's Units") out of the duly authorized and outstanding equity of 2B for the consideration identified herein." ECF 1-2, p. 2.  As Plaintiff notes in her Complaint and as is evident from the signature page of the contract, Defendant signed the contract as "Owner:" ECF 1, ¶15 and ECF 1-2, p. 8.

Next, the Complaint notes that Section IX of the contract indicates "that Defendant must buy back the Units from Plaintiff if written notice is given within twelve (12) months[,]" and the Complaint again references the contract for this provision. ECF 1, ¶17.  The specific section of the contract attached to the Complaint implicated by Plaintiff's allegation concerning the buy back provision reads:

> **Section IX. Redemption of Units**
> At any time within twelve (12) months from October 31, 2024, the Buyer may request that the Owner redeem the Owner's Units. Specifically, the Buyer shall submit its request for redemption in writing to the Owner. The Owner shall redeem the Owner's Units within thirty (30) days of the Buyer's written request so long as the Buyer is not in violation of this Agreement. All transaction documents shall be prepared by HTO's attorneys and shall be to HTO's satisfaction. The Owner shall pay the Buyer the Purchase Price (as defined herein) as consideration for the Owner's Units, less any amounts that have not yet been paid pursuant to the Secured Promissory Note. The Buyer's request for redemption can be for any reason, or no reason, and shall be in its sole and exclusive discretion.

ECF 1-2, p. 7.

Finally, Plaintiff's Complaint alleges that Defendant breached the Contract by failing to buy back or redeem a portion of the units Plaintiff purchased after being provided with timely

2

written notice as required by Section IX of the Contract.  ECF 1, ¶26. Plaintiff claims she is

owed the sum of 1,686,973.00 as a result of Defendant's alleged breach.  ECF 1, ¶29.

## II. Standard of Review - Rule 12(b)(6)

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon

which relief can be granted."  Detailed factual pleading is not required – Rule 8(a)(2) calls for a

"short and plain statement of the claim showing that the pleader is entitled to relief" – but a

Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible

claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard does not

require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a

defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Determining the plausibility of an

alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  Id. at 679

Building upon the landmark United States Supreme Court decisions in *Twombly* and

*Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court

must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to
> state a claim. Second, the court should identify allegations that, because
> they are no more than conclusions, are not entitled to the assumption of
> truth.  Finally, where there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly
> give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented

and to determine whether the facts pled to substantiate the claims are sufficient to show a

"plausible claim for relief."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d

114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (In reference to third step, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a Motion to Dismiss for failure to state a claim, the Court must view all of the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. See *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions"). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**III. Discussion**

Courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a motion to dismiss. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). A court may also properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (*Id.*) (citations omitted). *See also, Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint . . .".).  Additionally, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted, internal quotation marks and brackets removed) (emphasis in original).

The contract in the instant case is an "integral document" because: (1) it was attached to the Complaint, (2) the allegations in the Complaint explicitly rely upon the contract, and (3) the Parties both agree that "Section IX" of this contract – which discusses the redemption provision – is integral to Plaintiff's claims that Defendant's alleged breach occurred.

To maintain a breach of contract action under Pennsylvania law a plaintiff must allege: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Rupert v. Range Res. - Appalachia, LLC*, No. 21-1281, 2022 WL 1689510, at *8 (W.D. Pa. May 26, 2022) (Dodge, J.). "The burden of proof in a contract action is on the party asserting the breach who must prove the breach by a preponderance of the evidence." *Giacone v. Virtual*

*Officeware, LLC*, No. 13-1558, 2014 WL 7070205, at \*11 (W.D. Pa. Dec. 12, 2014) (Schwab,

J.), *aff'd*, 642 F. App'x 137 (3d Cir. 2016).

Under Pennsylvania law, courts are tasked with interpreting "the intent of the contracting

parties, as they objectively manifest it." *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.,* 198

F.3d 415, 421 (3d Cir. 1999). As an initial step, the court must determine whether the contract is

ambiguous. *Id.* A contract is ambiguous if more than one reasonable interpretation exists.

*Ungarean v. CNA & Valley Forge Ins. Co.,* 323 A.3d 593, 604 (Pa. 2024). Where the contract is

clear and unambiguous, the plain meaning of the terms control. *Vinculum, Inc. v. Goli Techs.,*

*LLC*, 310 A.3d 231, 244 (Pa. 2024).

The United States Court of Appeals for Third Circuit summarized the basic principles of

Pennsylvania's contract law as follows:

> Pennsylvania contract law begins with the "firmly settled" point that "the
> intent of the parties to a written contract is contained in the writing itself."
> *Krizovensky v. Krizovensky*, 425 Pa.Super. 204, 624 A.2d 638, 642 (1993)
> (citing *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982)). " 'Where
> the intention of the parties is clear, there is no need to resort to extrinsic
> aids or evidence,' " instead, the meaning of a clear and unequivocal
> written contract " 'must be determined by its contents alone.' " *Steuart,*
> 444 A.2d at 661 (quoting *East Crossroads Ctr., Inc. v. Mellon–Stuart Co.,*
> 416 Pa. 229, 205 A.2d 865, 866 (1965)). "[W]here language is clear and
> unambiguous, the focus of interpretation is upon the terms of the
> agreement as *manifestly expressed*, rather than as, perhaps, silently
> intended." *Id.* "Clear contractual terms that are capable of one reasonable
> interpretation must be given effect without reference to matters outside the
> contract." *Krizovensky,* 624 A.2d at 642.
>
> A court may, however, look outside the "four corners" of a contract if the
> contract's terms are unclear: "[w]here the contract terms are ambiguous
> and susceptible of more than one reasonable interpretation, ... the court is
> free to receive extrinsic evidence, *i.e.*, parol evidence, to resolve the
> ambiguity." *Id.* But because Pennsylvania presumes that the writing
> conveys the parties' intent, a contract will be found ambiguous if, and only
> if, it is reasonably or fairly susceptible of different constructions and is

capable of being understood in more senses than one and is obscure in
meaning through indefiniteness of expression or has a double meaning.
A contract is not ambiguous if the court can determine its meaning without
any guide other than a knowledge of the simple facts on which, from the
nature of the language in general, its meaning depends; and a contract is
not rendered ambiguous by the mere fact that the parties do not agree on
the proper construction. *Duquesne Light Co. v. Westinghouse Elec. Corp.,*
*66 F.3d 604, 614 (3d Cir.1995)* (quoting *Samuel Rappaport Family*
*Partnership v. Meridian Bank,* 441 Pa.Super. 194, 657 A.2d 17, 21–22
*(1993))* (internal quotation marks omitted).

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.,* 247 F.3d 79, 92–93 (3d Cir. 2001).

Turning to the instant matter, the Court begins by noting that the parties undoubtedly

formed a contract, with each party having duties relative to the other. Equally important, the

contract provided definitions of certain terms, including the key term at issue in this case –

"Owner's Units."

As the Court noted in its "Background" section above, the Contract itself indicates that,

"[t]his letter ("Agreement") serves to set out the specific terms for purchase by [Plaintiff] of 150

Units of 2B Associates, LLC, a Delaware limited liability company ("2B" and "Company") from

[Defendant] ("Owner"), which comprise 15% of the issued and authorized Units of the Company

("Owner's Units") out of the duly authorized and outstanding equity of 2B for the consideration

identified herein." ECF 1-2, p. 2.  As Plaintiff notes in her Complaint and as is evident from the

signature page of the contract, Defendant signed the contract as "Owner:" ECF 1, ¶15 and ECF

1-2, p. 8.  Thus, the parties defined "Owners Units" as 150 units of the Company which

comprised 15% of the issued units of the Company.

Next, Section IX of the contract specifically reads:

> **Section IX. Redemption of Units**
> At any time within twelve (12) months from October 31, 2024, the **Buyer**
> [**Plaintiff] may request that the Owner redeem *the Owner's Units*.**
> Specifically, the Buyer shall submit its request for redemption in writing

7

> to the Owner. **The Owner shall redeem *the Owner's Units* within thirty (30) days of the Buyer's written request so long as the Buyer is not in violation of this Agreement.** All transaction documents shall be prepared by HTO's attorneys and shall be to HTO's satisfaction. **The Owner shall pay the Buyer the Purchase Price (as defined herein) as consideration for *the Owner's Units*, less any amounts that have not yet been paid pursuant to the Secured Promissory Note**. The Buyer's request for redemption can be for any reason, or no reason, and shall be in its sole and exclusive discretion.

ECF 1-2, p 7 (emphasis added).

Section IX of this contract references "Owner's Units" three times in this single paragraph. This section of the contract carefully indicated that "Owner's Units" – which had been previously defined as 15% of the issued units in the Company, which was equivalent to 150 units – could be redeemed by the Owner at the Plaintiff's request if certain criteria was met. Plaintiff admits in her Complaint that she attempted to redeem a portion of the Owner's Units – seeking redemption of 10% of the issued units.  See, ECF 1, ¶¶18-21 and ECF 1-4, p. 2 ("15% Shares purchased for $2,621,880   1% = $174,792   Selling back 10% = $1,747,920").

Stated simply, Plaintiff's Complaint claims that Defendant breached the contract by not allowing Plaintiff to redeem a portion of the Owner's Units. Plaintiff further alleges that she is entitled to damages because of this breach.

The Court, however, finds no such breach of the parties' contract.  This Court, tasked with interpreting "the intent of the contracting parties, as they objectively manifest it," finds that the contracting parties clearly and unambiguously defined the term "Owners Units" as 150 units. The redemption clause found in Section IX of the contact references "Owner's Units" three times throughout the paragraph as what may be redeemed by Plaintiff. Based on the definition of "Owner's Units" as "150 units," the Court concludes that Section IX of the contract clearly and unambiguously allowed Plaintiff to only redeem all 150 units – not a portion thereof.

In addition, Section IX also notes that the Defendant would pay the Plaintiff the "Purchase Price" for the "Owner's Units" if the Plaintiff sought redemption and met all the other proscribed criteria. The "Purchase Price" was defined in Section I of the contract as follows:

> I. *Owner's Units Purchase Price.* At Closing, HTO [Plaintiff] buys and Owner [Defendant] sells the Owner's Units for the Purchase Price. HTO must (i) pay the Owner according to the Waterfall by paying $2,250,000, executing and delivering the $371,880 Secured Promissory Note.

Thus, when Section IX requires the Owner [Defendant] to "pay the Buyer [Plaintiff] the Purchase Price (as defined herein) as consideration for *the Owner's Units*," the Defendant was expected to pay total purchase price for all 150 units "less any amounts that [had] not yet been paid pursuant to the Secured Promissory Note."

Based on the definitions to which the parties agreed upon when crafting this contract, the Court finds the redemption clause (as set forth in Section IX) only contemplated redemption of all 150 units, not a portion thereof. There is no ambiguity in this portion of the contract -- latent or otherwise.[1]

**IV. Conclusion**

Based upon the foregoing law and authority, the Court concludes that there is cognizable claim for a breach of contract and any attempt to Amend the Complaint for Defendant's refusal to redeem a portion of the Owner's Units would be futile. For all of the above reasons, the Court GRANTS the Defendant's Motion to Dismiss (ECF 13) with prejudice.

---

[1] Although the Plaintiff did not specifically argue that there was a "latent ambiguity," this Court read Plaintiff's opposing brief with great care and inferred that Plaintiff was arguing same given the black-and-white definition of "Owner's Units." This Court finds no latent ambiguity which leads this Court to further conclude that any attempt to amend the Complaint would be futile. *See, In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are . . . futility. . . . 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

SO ORDERED, this 13th day of March, 2026.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge


cc:  All ECF Counsel of Record